IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LUCIANNE M. WALKOWICZ,

          Plaintiff,

v.                                                                                              OPINION and ORDER

AMERICAN GIRL BRANDS, LLC, MATTEL INC.,                      20-cv-374-jdp
and AMERICAN GIRL, LLC,

          Defendants.

---

Plaintiff Lucianne Walkowicz has achieved a measure of celebrity as an astronomer. Walkowicz contends that defendants have misappropriated distinctive aspects of their personal identity into a space-themed American Girl doll named Luciana Vega.[1] Walkowicz brings claims under the Lanham Act, Wisconsin's privacy statute, and Wisconsin's common law of negligence. Dkt. 27.

Defendants move to dismiss Walkowicz's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 29. Based on Walkowicz's allegations, it's plausible that one familiar with Walkowicz might be confused about whether Walkowicz endorsed or is somehow affiliated with the Luciana Vega doll, and thus the amended complaint states a claim for false endorsement under the Lanham Act. But the amended complaint does not allege that defendants actually used Walkowicz's "name, portrait, or picture" as those concepts are used in Wisconsin's privacy statute, so the court will grant defendants' motion to dismiss that claim.

---

[1] Walkowicz's amended complaint refers to Walkowicz using the pronouns "she" and "her," but Walkowicz's brief, Dkt. 34, refers to Walkowicz using "they" and "them," as does Walkowicz's Twitter account, https://twitter.com/RocketToLulu. The court will refer to Walkowicz using "they" and "them" pronouns.

The court isn't persuaded that Wisconsin courts would recognize the duty that Walkowicz alleges was breached by defendants, so the court will dismiss Walkowicz's negligence claims.

BACKGROUND

The following information is drawn from Walkowicz's amended complaint, Dkt. 27, and the court accepts it as true for purposes of defendant's motion to dismiss. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Defendants American Girl, LLC and American Girl Brands, LLC produce the popular line of American Girl dolls. Both entities are headquartered in Middleton, Wisconsin, and are owned by defendant Mattel, Inc., a California corporation with its principal place of business in California.[2] The distinctions between these entities don't matter for the purpose of defendants' motion, so the court will refer to them collectively as "American Girl."

Plaintiff Lucianne Walkowicz is an astronomer and a TED Senior Fellow at the Adler Planetarium in Chicago. Among their public presentations is a TED talk that has been viewed more than a million times. In a 2011 presentation, Walkowicz discussed their work on NASA's Kepler Mission studying the constellation Lyra, including the constellation's brightest star, called Vega. In addition to discussing the Kepler Mission, Walkowicz has also discussed the potential colonization of Mars in an online presentation and in other venues, including on a National Geographic Channel television series.

---

[2] Although Walkowicz identifies both of the American Girl entities as LLCs, Walkowicz also alleges that they are both Delaware corporations. Dkt. 27, ¶¶ 4–5. The parties don't address this apparent contradiction, but the court has jurisdiction on the basis of a federal question, so the court doesn't need to address it, either.

Walkowicz presented their work on several occasions in Wisconsin, including a 2014 presentation in Madison as well as "space activities" and "public science outreach events" in Madison, Trempealeau, and La Crosse in 2016. Dkt. 27, ¶¶ 30–32. Walkowicz alleges that at least one American Girl employee or consultant attended each of these events.

In October 2016, American Girl entered into a contract with NASA "to consult on the accuracy of its dolls." *Id.*, ¶ 81. About a week later, Ellen Stofan, "a NASA doll consultant," attended a conference in Pittsburgh, Pennsylvania, at which Walkowicz presented. *Id.*, ¶ 82.

Later that year, American Girl applied for trademarks on a space-themed doll named Luciana Vega, which it began marketing in 2018 as its "Girl of the Year" doll. Walkowicz has a distinctive personal style, often wearing what they describe as "space themed clothing" and "holographic shoes." *Id.*, ¶¶ 112, 114. Walkowicz often wears a purple streak in their brown hair. Luciana also has a purple streak in her brown hair, and she is sold with a "space themed patterned dress" and "holographic" shoes. *Id.*, ¶¶ 107, 112, 114. American Girl also offers accessories for Luciana that include a model telescope, a Mars habitat playset, and a space suit. Per its usual practice, American Girl also produced a book about Luciana, which describes her as dreaming of becoming the first astronaut to travel to Mars.

After the Luciana doll was released, Walkowicz received multiple emails and social-media messages commenting on the similarities between Walkowicz and Luciana. Walkowicz also received inquiries about whether they had endorsed the doll. Walkowicz doesn't say who sent these messages and inquiries.

The court has jurisdiction over Walkowicz's Lanham Act claims because they are based on federal law, 28 U.S.C. § 1331, and the court can exercise supplemental jurisdiction over

Walkowicz's state-law claims because they are part of the same case or controversy as Walkowicz's federal claims, 28 U.S.C. § 1367.

ANALYSIS

Walkowicz contends that American Girl's promotion and sale of the Luciana Vega doll violated Walkowicz's rights under the Lanham Act, Wisconsin privacy law, and the common law of negligence. Both sides assume that Wisconsin law governs Walkowicz's state-law claims, so the court will do the same. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) ("[T]here's no discussion of choice of law issues, and so we apply the law of the forum state.").

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint; it is not an opportunity to undertake fact-finding or weigh evidence. But the court is not limited strictly to the complaint document itself. American Girl supports its motion to dismiss with several documents, including excerpts from the *Luciana* book and an American Girl catalog that are referred to in the complaint, documents relating to American Girl's registration of various copyrights and trademarks, and an excerpt from a 1986 Mattel catalog depicting an "Astronaut Barbie" doll along with its copyright registration. Dkt. 31 and Dkts. 31-1–31-10. Walkowicz objects that the court cannot consider these documents without converting American Girl's motion to dismiss into one for summary judgment. But the excerpts from the *Luciana* book and the American Girl catalog are referred to in Walkowicz's complaint and are central to Walkowicz's claims, so the court can properly consider them under the doctrine of incorporation by reference. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). And the court can consider the copyright and trademark registration documents because

they are documents in the public record subject to judicial notice. *Slep-Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 904 (N.D. Ill. 2014). Likewise, the Mattel catalog excerpt is also in the public record because it's taken from deposit materials for the catalog's copyright registration. The court will consider all these documents in deciding defendant's motion to dismiss.

**A. Independent development**

American Girl argues that Walkowicz's claims must be dismissed because even if Walkowicz's allegations are taken as true, American Girl independently developed the Luciana Vega doll before American Girl learned of Walkowicz's existence. In support of this argument, American Girl relies on the following facts, all of which are based either on judicially noticeable copyright or trademark materials or on allegations in Walkowicz's complaint: (1) American Girl applied for trademarks for dolls named "Luciana" and "Princess Luciana" between 2006 and 2010; (2) since 2001, American Girl has used the same facial structure for its "Girl of the Year" dolls (or used the same structure with only minor variations), including for the Luciana Vega doll; and (3) Mattel has long produced and sold space-themed dolls and accessories, including "Astronaut Barbie" in 1986.

The facts established by this evidence suggest that American Girl had independently developed *some* of the characteristics that were later incorporated into the Luciana Vega doll. But they don't establish that American Girl independently developed *all* of the doll's characteristics or decided to combine them into a space-themed doll named Luciana Vega without any knowledge of Lucianne Walkowicz. Indeed, the "Princess Luciana" trademark application shows that American Girl intended to use the name "Luciana" for an entirely different type of doll.

5

Defendants have not established their independent development of the constellation of features to which Walkowicz objects. And, in any case, independent creation would be only one factor to consider under the Lanham Act; it would not be a complete legal defense.

## B. Lanham Act claim

Walkowicz contends that American Girl violated their rights under the Lanham Act, which protects unregistered marks from certain types of infringement. 15 U.S.C. § 1125. Walkowicz's amended complaint doesn't identify a particular theory of liability under the Lanham Act, but the complaint isn't required to do so, as "[p]laintiffs need only plead facts, not legal theories, in their complaints." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014). In their response brief, Walkowicz clarifies that they are bringing what is known as a false-endorsement claim under the Lanham Act. "False endorsement occurs when a person's identity is connected with a product . . . in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product." *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 880 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010). Walkowicz contends that the Luciana doll uses features of Walkowicz's identity, creating confusion about whether Walkowicz endorsed the doll or is otherwise affiliated with it.

American Girl contends that Walkowicz's false-endorsement claim should be dismissed for two reasons: (1) Walkowicz cannot sue under the Lanham Act because they haven't plausibly alleged that they have a commercial interest protected by the Act; and (2) Walkowicz hasn't plausibly alleged a likelihood of confusion.

### 1. Commercial interest

To bring a false-endorsement claim under the Lanham Act, Walkowicz must allege a protectable commercial interest that has been harmed by American Girl's conduct. *See Lexmark*

6

*Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014) (to bring false-advertising claim under § 1125, "a plaintiff must allege an injury to a commercial interest in reputation or sales"); *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 932 (N.D. Ill. 2016) (applying *Lexmark*'s commercial-interest requirement to Lanham Act false-endorsement claim).

Walkowicz plausibly pleads that they have a commercial interest in giving scientific presentations, appearing on scientific television shows, and participating in science-related events. And Walkowicz alleges that confusion about whether they endorsed the doll has "led to interference with [their] professional public persona" and "dilute[d] the value of [their] name." Dkt. 27, ¶ 136.

American Girl contends that Walkowicz has failed to allege a protectable commercial interest because Walkowicz isn't "actively engaged in commercial activity associated with dolls or doll accessories or any company that could be considered a competitor of American Girl." Dkt. 30, at 37. But Walkowicz doesn't have to be engaged in direct competition with American Girl to bring a false-endorsement claim. *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989). What matters is whether Walkowicz has "a reasonable interest to protect in a commercial activity." *Stayart*, 623 F.3d at 438 (internal quotation marks omitted). Walkowicz has alleged a commercial interest in public speaking and outreach activities, which could plausibly be damaged by the perception that Walkowicz was associated with defendant's commercial activities.

American Girl also contends that the Lanham Act claim fails because Walkowicz hasn't alleged "a commercial interest in their first name alone." Dkt. 35, at 24. If Walkowicz had based the complaint solely on defendant's use of "Luciana," defendants would have a fair point. But the Lanham Act creates a cause of action for the misleading commercial use of "any word,

7

term, name, symbol, or device, *or any combination thereof.*" 15 U.S.C. § 1125(a)(1)(A) (emphasis added). Walkowicz complains about defendants' use of several features of their personal identity, which together pose a likelihood of confusion.

Walkowicz has plausibly alleged a commercial interest that is protected by the Lanham Act.

### 2. Consumer confusion

The key issue in a false endorsement case is whether defendants' use would be likely to confuse an ordinary consumer about whether the plaintiff has sponsored or approved of defendants' goods or services. *Martin v. Wendy's Int'l, Inc.*, 714 F. App'x 590, 591 (7th Cir. 2018); *Stayart*, 651 F. Supp. 2d at 882–83. Consumer confusion "is a fact-intensive analysis" that "ordinarily does not lend itself to a motion to dismiss." *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. 2014) (internal quotation marks omitted). At this stage, the question is whether Walkowicz "has pleaded facts that plausibly could result in a successful outcome" on the consumer-confusion requirement. *Id.*

Consideration of consumer confusion in the false-endorsement context involves several factors, "including the level of plaintiff's recognition among the segment of the society for whom defendant's product is intended, the relatedness of plaintiff's fame or success to defendant's product, and defendant's intent in selecting the plaintiff." *Stayart*, 651 F. Supp. 2d at 883. Regarding the first factor, Walkowicz is not toiling away anonymously in a lab, but is building a reputation as a celebrity scientist known to the general public. Walkowicz alleges that they are widely recognized for their scientific accomplishments, with some of their presentations having been viewed more than one million times. It's reasonable to infer that this recognition extends to at least some part of American Girl's intended market for the Luciana

Vega doll. Regarding the second factor, Walkowicz alleges that they are known specifically for their research and presentations on astronomy and Mars exploration, both of which are key aspects of the doll and its accessories. Regarding the third factor, Walkowicz alleges that American Girl developed a doll with a similar name, hairstyle, clothing, and interest in space after its employees and consultants saw Walkowicz's presentations. It's reasonable to infer from these allegations that American Girl intended to evoke Walkowicz's public image to lend legitimacy and realism to the Luciana Vega doll. So all three factors weigh against dismissal of the claim.

Walkowicz also alleges incidents of actual confusion, stating that they have received multiple inquiries about whether they endorsed the doll based on the similarities between the doll and Walkowicz. Dkt. 27, ¶¶ 128–35. It's not clear whether those who were confused were part of the relevant markets. But, for purposes of the motion to dismiss, the allegations provide some support for the likelihood of consumer confusion. *See Ratchford v. AEG Ventures, LLC*, No. 17 C 7368, 2019 WL 10248701, at *5 (N.D. Ill. Mar. 11, 2019).

The allegations in Walkowicz's complaint, taken as true, would support the conclusion that Walkowicz has a protectable commercial interest and that consumers are likely to be confused about whether Walkowicz endorsed or is otherwise affiliated with the Luciana Vega doll. So the court will deny American Girl's motion regarding Walkowicz's Lanham Act claim.

American Girl also contends that even if Walkowicz's false-endorsement claim isn't dismissed, the court should strike Walkowicz's request for cancellation of the registration of American Girl's "Luciana" and "Luciana Vega" marks because cancellation is unsupported by the amended complaint. Walkowicz doesn't respond to American Girl's argument, so the court concludes that Walkowicz has conceded the point. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168

9

F.3d 1039, 1041 (7th Cir. 1999) (upholding dismissal of plaintiff's complaint for failure to respond to defendant's arguments). The court will dismiss Walkowicz's request for cancellation of defendants' trademark registrations.

## C. Right of privacy claim

Walkowicz contends that the Luciana Vega doll violates their right of privacy under Wis. Stat. § 995.50(2)(am)2, which prohibits the unauthorized use of a living person's "name, portrait, or picture" for advertising purposes or for purposes of trade. American Girl argues that Walkowicz fails to state a claim under this statute because Walkowicz doesn't allege that American Girl used their name, portrait, or picture as those concepts are used in the statute. The court agrees, so it need not address American Girl's alternative argument that its use of Walkowicz's identity was not for advertising purposes or for purposes of trade, as required under the statute.

There is little precedent interpreting § 995.50(2). But the statute expressly provides that it "shall be interpreted in accordance with the developing common law of privacy." Wis. Stat. § 995.50(3). Because of this provision, and because the statute was modeled on New York's privacy statute, N.Y. Civ. Rights §§ 50 and 51, the Court of Appeals for the Seventh Circuit has stated that "sound analysis" of Wisconsin's statute includes consideration of persuasive authority from other jurisdictions, particularly New York. *Bogie v. Rosenberg*, 705 F.3d 603, 610 (7th Cir. 2013).

### 1. Walkowicz's portrait or picture

Walkowicz doesn't contend that the Luciana Vega doll is a literal "portrait" or "picture" of them. Rather, they contend that American Girl has used Walkowicz's portrait or picture within the meaning of § 995.50 because some aspects of the doll's appearance are based on

10

Walkowicz's appearance—specifically, the purple-streaked brown hair, space-patterned dress, and holographic shoes. Neither side identifies any authority interpreting the meaning of "portrait" or "picture" in Wisconsin's statute, and the court hasn't found any binding authority on this point either. But New York's highest state court, the Court of Appeals, recently addressed this question in applying New York's privacy statute. *Lohan v. Take-Two Interactive Software, Inc.*, 97 N.E.3d 389 (N.Y. 2018). In that case, Lindsay Lohan alleged that the makers of a video game had used her "portrait" without consent in creating a character in the game who resembled her and who was, like Lohan, a famous actor.

Under *Lohan*, the key question under the statute is whether the challenged image is a "recognizable likeness" of the plaintiff. *Id.* at 395 (quotation marks omitted). If a jury could not reasonably conclude that the challenged image is identifiable as the plaintiff solely from the image itself, the court must dismiss the claim as a matter of law. *Id.* "That legal determination will depend on the court's evaluation of the quality and quantity of the identifiable characteristics present in the purported portrait." *Id.* (quotation marks omitted). The court concluded that the challenged character wasn't recognizable as Lohan because it was "merely a generic artistic depiction of a 'twenty something' woman without any particular identifying *physical* characteristics." *Id.* at 395 (emphasis added).

Walkowicz says that *Lohan* should be distinguished because it relies on the "incidental use" exception, which applies when the use of a plaintiff's image "constitutes only a minor piece of a much broader entire work." Dkt. 34, at 24. But this exception appears nowhere in *Lohan*, so it's not a reason to distinguish the case.

Walkowicz concedes in their amended complaint that their "nationality and skin color" differ from that of Luciana Vega and that the doll's facial structure is either "entirely identical"

11

or "nearly identical" to every other American Girl "Girl of the Year" doll. Dkt. 27, ¶¶ 104, 107. Other than their purple-streaked brown hair, Walkowicz identifies no bodily similarities shared with the Luciana Vega doll. Walkowicz relies on similarities in manner of dress (both sport "holographic shoes" and "space patterned dress[es]") and biographical characteristics that have nothing to do with visual appearance (Walkowicz's "expertise in the ethics of Mars exploration" and Luciana Vega's interest in exploring Mars). Dkt. 34, at 22. But "[m]erely suggesting certain characteristics of the plaintiff, without literally using his or her name, portrait, or picture, is not actionable under" New York's privacy statute. *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 621 (S.D.N.Y. 1985).

Walkowicz relies on *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992), for the proposition that a similar style of dress and accessories support a § 995.50 claim. The plaintiff in that case, Vanna White of *Wheel of Fortune* fame, challenged an advertisement depicting "a robot, dressed in a wig, gown, and jewelry which [defendant] consciously selected to resemble White's hair and dress" that was "posed next to a game board which [was] instantly recognizable as the Wheel of Fortune game show set." *Id.* at 1396. But the holding on which Walkowicz relies was based on White's "right of publicity" claim under California common law, which concerned whether the defendants "had appropriated her identity" in the advertisement. *Id.* at 1399. The question under the Wisconsin statute isn't whether American Girl appropriated Walkowicz's "identity" but whether American Girl used Walkowicz's "portrait" or "picture." Indeed, elsewhere in the opinion, the *White* court *upheld* the district court's grant of summary judgment to the defendants on White's claim under California's privacy statute, Cal. Civ. Code § 3344(a), in which White alleged that the advertisement had used her "likeness." *Id.* at 1397. The court noted that the statutory claim failed because

12

defendants had "used a robot with mechanical features, and not, for example, a manikin molded to White's precise features." *Id.* So *White* doesn't help Walkowicz on the Wisconsin statutory claim.

The only other authority that Walkowicz cites to support their position that similar clothing styles can constitute the use of a portrait or image is *Loftus v. Greenwich Lithographing Co.*, 192 A.D. 251 (N.Y. App. Div. 1920). The plaintiff in that case had been photographed "in a special costume called the rose costume, which was made . . . specially for her," wearing "a hat representing the leaves of a flower." *Id.* at 252. She contended that a drawing on a movie poster of a woman in an identical dress and in an identical pose was an unauthorized use of her portrait or image under New York's privacy statute. Finding for the plaintiff, the court concluded that it was "perfectly evident that [the artist] had and used a copy of the photograph, and that he copied the features of the plaintiff." *Id.* at 256. But this case doesn't help Walkowicz either. Unlike *Loftus*, Walkowicz doesn't contend that defendants based the Luciana Vega design on a particular photograph of them. And more importantly, *Loftus*'s holding was based on a unique costume that was singularly identified with the plaintiff. Walkowicz doesn't allege that they are the only person to wear space-themed clothing or holographic shoes, nor do they identify any unique similarities between the clothing they have worn and Luciana Vega's clothing.

Purple-streaked brown hair is the only bodily characteristic that Walkowicz says that they share with the Luciana Vega doll. This single shared characteristic isn't enough to support the inference that the doll was based on Walkowicz's portrait or picture, so Walkowicz has failed to state such a claim under § 995.50.

## 2. Walkowicz's name

Walkowicz also contends that "Luciana Vega" is an unauthorized use of their name, also prohibited under § 995.50. Walkowicz relies primarily on *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 280 N.W.2d 129 (1979), in which the Wisconsin Supreme Court held that retired football player Elroy "Crazylegs" Hirsch could bring a common-law tort suit against the manufacturer of "Crazylegs" shaving gel. In that case, the court said that the defendant's use of Hirsch's nickname rather than his actual name didn't preclude the suit because "[a]ll that is required is that the name clearly identify the wronged person." *Id.* at 137. Likewise, courts have construed New York's privacy statute to apply to the unauthorized use of a stage name or other fictitious name that is closely identified with the plaintiff. *See, e.g.*, *DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 53 (E.D.N.Y. 1994).

But it's not plausible that "Luciana Vega" would clearly identify Walkowicz. Walkowicz doesn't allege that, like Cher or Bono, they are so well-known by "Lucianne" alone that the variant "Luciana" would clearly identify them. Nevertheless, they contend that American Girl has used their name "by implementing a variation of Lucianne's first name" along with "Vega," the name of a star that "Lucianne has studied for many years, and long been widely affiliated [with]." Dkt. 34, at 21. But they cite no authority, under Wisconsin law or that of any other jurisdiction, to support the position that "Vega"—a word that is associated with Walkowicz to some degree but has never been used to identify them—could be considered their "name" for the purpose of Wisconsin's privacy statute.

Other than *Hirsch*, the only case that Walkowicz cites is *McFarland v. Miller*, 14 F.3d 912 (3d Cir. 1994). In that case, the court considered a lawsuit by George McFarland, who portrayed the character "Spanky" in "Our Gang" and "Little Rascals" short films, against a

14

restaurant called Spanky McFarland's. Applying New Jersey common law, the court said that the key question was "whether McFarland had become so inextricably intertwined with Spanky McFarland that McFarland's own identity would be invoked by the name Spanky." *Id.* at 921. But *McFarland* doesn't support Walkowicz's position either because, like *Hirsch*, it involved a plaintiff who was widely known by the nickname at issue.

Walkowicz also argues that "Luciana Vega" clearly identifies them because "[t]he public has in fact identified Lucianne from the attributes of the LUCIANA VEGA doll." Dkt. 34, at 21. In support of this argument, they cite allegations in their complaint that they have received inquiries about whether they had endorsed the doll. Dkt. 27, ¶ 132. Elsewhere in their complaint, they allege that "[e]ach person who contacted Lucianne regarding the similarities [between Walkowicz and the Luciana doll] did so based on the totality of the similarity to Lucianne's name, hair, dress, mannerisms, profession, and even specific aspects of Lucianne's research." *Id.,* ¶ 130.

Perhaps Walkowicz means to suggest that even if American Girl's use of the name "Luciana Vega," standing alone, isn't actionable under § 995.50, the similarities of the two names, considered alongside these other identifying characteristics, would support a claim under the statute. But they cite no authority that would support this argument, nor has the court found any. And *White* shows why such an argument would fail. As already discussed, the *White* court distinguished between a broad common-law claim based on the use of a person's overall "identity" and a narrower statutory claim based on the use of a person's particular "likeness." *White*, 971 F.2d at 1397, 1399. Section 995.50 says nothing about the

15

appropriation of a person's overall "identity" or "persona"; it creates a cause of action only for the use of a person's name, portrait, or picture.[3]

As with American Girl's alleged use of Walkowicz's portrait or picture, Walkowicz's allegations don't support a claim that American Girl has used their name within the meaning of § 995.50. The court will dismiss Walkowicz's claims under this statute.

**D. Claims for negligence and negligent supervision**

Walkowicz alleges that American Girl negligently violated their rights by using their "name and likeness" in the Luciana Vega doll. Dkt. 27, ¶ 189. And they allege that American Girl negligently supervised its employees by failing to prevent them from using Walkowicz's name and likeness. American Girl contends that both of these claims must be dismissed for several reasons, but because the court isn't persuaded that Wisconsin courts would recognize the duty that Walkowicz relies on, the court doesn't need to consider American Girl's other arguments.

A negligence claim under Wisconsin law has four elements: duty, breach, causation, and injury. *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17. Wisconsin law imposes a general duty of ordinary care on every person. *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 17, 318 Wis. 2d 622, 768 N.W.2d 568. Walkowicz contends that this duty required American Girl to refrain from using their name and "likeness," which they define somewhat circularly as their "image, likeness, and persona collectively." *Id.*,

---

[3] In addition to the privacy rights created by § 995.50, Wisconsin courts also recognize a common-law tort of misappropriation of "the property rights in the publicity value of aspects of a person's identity." *Hirsch*, 280 N.W.2d at 130. But Walkowicz doesn't assert this type of common-law claim in their amended complaint.

16

¶¶ 189–90. Likewise, Walkowicz says that American Girl had a duty to prevent its employees from appropriating Walkowicz's name and likeness. *Id.*, ¶¶ 200–01.

But Wisconsin courts frame the duty of ordinary care more narrowly than this, defining it as the duty to "refrain[] from those acts that may unreasonably threaten the *safety* of others," *Behrendt*, 2009 WI 71, ¶ 17 (emphasis added) (internal quotation marks omitted), or the duty to avoid "creating an unreasonable risk of injury or damage *to a person or property*," *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 30, 291 Wis. 2d 283, 717 N.W.2d 17 (emphasis added). Accordingly, the Court of Appeals for the Seventh Circuit has noted its belief "that Wisconsin would decline in all circumstances to allow a negligence suit for the recovery of only economic damages, even when there is no contractual relationship between the parties." *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1300 (7th Cir. 1991). In support of this position, the court quoted a preeminent torts treatise for the proposition that "[g]enerally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from *tangible physical harm to persons or tangible things*." *Id.* (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 657 (5th ed. 1984) (emphasis added)).

Although Walkowicz alleges that they have suffered reputational injury to their professional persona, they don't allege the type of physical harm that traditionally lies at the heart of duty. Walkowicz doesn't identify any case in which a Wisconsin court identified a duty to avoid negligently inflicting a reputational injury or to avoid negligent misappropriation of another's likeness, and the court has found none in its research. Walkowicz does identify two recent cases in which federal district courts in other jurisdictions have allowed similar negligence claims to proceed. *Souza v. Algoo Realty, LLC*, No. 3:19-cv-00863, 2020 WL

5300925, at *9 (D. Conn. Sept. 4, 2020); *Hinton v. Vonch, LLC*, No. 18 CV 7221, 2019 WL 3554273, at *3–4 (N.D. Ill. Aug. 2, 2019). But neither of these courts was applying Wisconsin law, so neither case is instructive on how Wisconsin courts would handle these claims.

Wisconsin, like other jurisdictions, has expanded the concept of duty to include the duty to avoid inflicting some kinds of emotional injury. *See, e.g.*, *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994). So it's possible that Wisconsin courts might further expand the concept to include the type of duty that Walkowicz relies on here. But Wisconsin courts have done so cautiously, imposing restrictions on what types of claims may be brought for non-physical damages. For example, plaintiffs bringing claims for negligent infliction of emotional distress must show that they suffered "*severe* emotional distress" due to the defendant's conduct. *Id.* at 435 (emphasis added). And a bystander to an injury who brings a claim for negligent infliction of emotional distress must satisfy three additional requirements: (1) the victim must have been killed or seriously injured; (2) the plaintiff must be closely related to the victim; and (3) the plaintiff must have either witnessed the accident itself or seen the injured victim at the scene shortly afterward. *Rabideau v. City of Racine*, 2001 WI 57, ¶ 23, 243 Wis. 2d 486, 627 N.W.2d 795. The Wisconsin Supreme Court imposed these restrictions based on two historical public policy concerns: "(1) establishing that the claim is genuine, and (2) ensuring that allowing recovery will not place an unfair burden on the tortfeasor." *Id.*, ¶ 22.

Because of the public policy concerns that surround the expansion of tort liability, and because of the lack of any Wisconsin authority recognizing the type of duty that Walkowicz alleges, the court is unwilling to speculate about whether Wisconsin courts would expand the concept of duty in this way. *See Custom Underground, Inc. v. Mi-Tech Servs., Inc.*, No. 10-CV-222-JPS, 2011 WL 5008343 (E.D. Wis. Oct. 20, 2011) (granting summary

judgment to defendant on negligence claim "for solely economic injury" "because this court is unable to predict what the Wisconsin courts would do in such a case, and because of the substantial policy considerations involved"); *see also Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir. 1987) (per curiam) (court "unwilling[] to speculate on any trends in state law," especially with "a plaintiff . . . who has chosen to litigate his state law claim in federal court"). The court will grant American Girl's motion to dismiss the negligence claims.

ORDER

IT IS ORDERED that defendants' motion to dismiss plaintiff Lucianne M. Walkowicz's amended complaint, Dkt. 29, is GRANTED in part. The following are DISMISSED from the amended complaint: Walkowicz's requested remedy of cancellation; Walkowicz's claim for violation of Wis. Stat. § 995.50; and Walkowicz's claims for negligence and negligent supervision. Defendants' motion is DENIED with respect to Walkowicz's Lanham Act claim for false endorsement.

Entered February 11, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge