## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LUCIANNE M. WALKOWICZ,<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN GIRL, LLC., AMERICAN<br>GIRL BRANDS, LLC, and MATTEL, INC.<br><br>          Defendants. | Civil Action No.: 3:20-cv-00374-jdp |

## ANSWER TO AMENDED COMPLAINT

Defendants American Girl, LLC, American Girl Brands, LLC, and Mattel, Inc. (collectively, "Defendants"), by their attorneys, Quarles & Brady LLP, hereby submit their Answer and Affirmative Defenses to the Amended Complaint of Plaintiff Lucianne M. Walkowicz ("Plaintiff" or "Walkowicz").  The paragraphs in this Answer are numbered to correspond with the paragraph numbers in Plaintiff's Amended Complaint.  Any and all allegations in Plaintiff's Amended Complaint that are not specifically admitted are hereby denied.

Defendants state as follows:

### NATURE OF ACTION

1.  This is an action for the violation of right of publicity, false designation of origin in violation of 15 U.S.C. § 1125(a), unfair competition, and related claims.

**ANSWER:**  Defendants admit that the Amended Complaint purports to state claims for violation of Wis. Stat. § 995.50, violation of 15 U.S.C. § 1125, and negligence.  Pursuant to the Court's February 11, 2021 Order (Dkt. 40), the Court dismissed the claim under Wis. Stat. § 995.50, the claims for negligence and negligent supervision, and Plaintiff's requested remedy of

1

cancellation.  Defendants deny that Plaintiff has stated any additional or related claims and

denies any remaining allegations in Paragraph 1.

2.  By this action, Dr. Walkowicz seeks compensatory damages, punitive damages, statutory damages, reasonable attorney's fees and costs, injunctive relief, and all other relief to which Lucianne may be entitled as a matter of law.

**ANSWER:**  Defendants admit that the Complaint purports to seek the relief stated in

Paragraph 2, but Defendants deny that Plaintiff is entitled to such relief.

## PARTIES

3.  Dr. Walkowicz is a citizen of the State of Illinois and a resident of Cook County, Illinois.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 3 and therefore deny those allegations.

4.  American Girl, LLC is a Delaware corporation with its principal place of business in Middleton, Wisconsin.

**ANSWER:**  Defendants admit the allegations in Paragraph 4.

5.  American Girl Brands, LLC is a Delaware corporation with its principal place of business in Middleton, Wisconsin.

**ANSWER:**  Defendants admit the allegations in Paragraph 5.

6.  Mattel, Inc. ("Mattel") is a California corporation with its principal place of business in El Segundo, California.

**ANSWER:**  Defendants admit the allegations in Paragraph 6.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over the subject matter of the Plaintiff's claims under 15 U.S.C. § 1125, as well as 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**  The allegations contained in Paragraph 7 constitute legal conclusions to

which no answer is required.  To the extent a response is necessary, Defendants admit that this

Court has subject matter jurisdiction for purposes of this action.

QB\67069140.6

8.  This Court also has jurisdiction over the subject matter of the Plaintiff's claims pursuant to 28 U.S.C. § 1332 as (a) the Plaintiff and the Defendants are citizens of different states and (b) the amount in controversy exceeds $75,000.00.

**ANSWER:**  The allegations contained in Paragraph 8 constitute legal conclusions to which no answer is required.  To the extent a response is necessary, Defendants admit that this Court has subject matter jurisdiction for purposes of this action.

9.  Defendants American Girl, LLC and American Girl Brands, LLC (collectively, "American Girl") operate in and sell products within the State of Wisconsin.

**ANSWER:**  Defendants admit American Girl Brands, LLC operates and sells products within the State of Wisconsin.  Defendants admit American Girl, LLC operates within the State of Wisconsin but deny that it sells products within the State.

10.  Defendant Mattel purchased American Girl in 1998.

**ANSWER:**   Defendants admit that Mattel purchased American Girl's predecessor-in-interest in 1998.  Defendants deny any remaining allegations in Paragraph 10.

11.  Defendant Mattel operates American Girl as subsidiaries in the State of Wisconsin.

**ANSWER:**  Defendants admit that American Girl's predecessor-in-interest became a subsidiary of Mattel in 1998.  Defendants admit American Girl Brands, LLC and American Girl, LLC operate within the State of Wisconsin.  Defendants deny any remaining allegations in Paragraph 11.

12.  Defendant Mattel sells products within the State of Wisconsin.

**ANSWER:**  Defendants deny the allegations of Paragraph 12.

13.  This Court may exercise personal jurisdiction over the Defendants because they have sufficient contacts with Wisconsin for this Court to exercise general personal jurisdiction over them and/or have engaged in specific conduct relating to the Plaintiff in this jurisdiction sufficient for this Court to exercise specific personal jurisdiction over them.

**ANSWER:**  The allegations contained in Paragraph 13 constitute legal conclusions to which no answer is required.  To the extent a response is required, for the limited purposes of

this instant action, Defendants do not challenge personal jurisdiction in the context of the single

claim remaining in the Amended Complaint following the Court's February 11, 2021 Order

(Dkt. 40).

14.  Venue in this district is proper pursuant to 28 U.S.C. § 1391 because (a) the Defendants American Girl operate within this district and (b) a substantial part of the events or omissions giving rise to the claims occurred in this district.

**ANSWER:**  The allegations contained in Paragraph 14 constitute legal conclusions to

which no answer is required.  To the extent a response is required, for the limited purposes of

this instant action, Defendants do not challenge venue of this case in this district.  Defendants

deny any remaining allegations of Paragraph 14

15.  The Defendants engaged in intentional conduct that has harmed the Plaintiff.

**ANSWER:**  Defendants deny the allegations of Paragraph 15.

16.  The Plaintiff has been injured by the Defendants' conduct and has suffered damages resulting therefrom in an amount greater than $75,000.00.

**ANSWER:**  Defendants deny the allegations of Paragraph 16.

## FACTUAL BACKGROUND

17.  Dr. Lucianne Walkowicz is an astronomer and TED Senior Fellow at the Adler Planetarium.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 17, and therefore deny those allegations.

18.  Lucianne has spent much of her career involved with the NASA Kepler mission.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 18, and therefore deny those allegations.

19.  A significant component of the NASA Kepler mission involves studying the constellation Lyra at its center.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 19, and therefore deny those allegations.

20.  At the center of Lyra, Vega sits as the brightest star in the constellation.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 20, and therefore deny those allegations.

21.  Over the course of her career, Lucianne has discussed Vega numerous times.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 21, and therefore deny those allegations.

22.  In July 2011, Lucianne presented a TED talk in Scotland on "Finding Planets Around Other Stars."

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 22, and therefore deny those allegations.

23.  This TED talk has been viewed at least 1.2 million times on the TED website.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 23, and therefore deny those allegations.

24.  On September 29, 2014, an advertisement appeared in the Wisconsin State Journal announcing Lucianne's visit to Monona Terrace as a TED speaker in relation to the Kepler mission.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 24, and therefore deny those allegations.

25.  On September 30, 2014, Lucianne presented a lecture at Monona Terrace in Madison, Wisconsin.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 25, and therefore deny those allegations.

26.  The introduction to the Lecture read:

It's really the starlight that sets the stage for the formation of life in the universe," says astrophysicist and TED Fellow Lucianne Walkowicz. She credits the tiny dimming as a planet passes in front of its sun that is key to finding

planets – even habitable planets – around other stars. Walkowicz and the Kepler mission have found some 1,200 potential planetary systems. With new techniques, they may even find ones with the right conditions for life. Come hear Walkowicz's latest discoveries in this clear and interactive talk.

Speaker bio: Lucianne Walkowicz is a lifelong explorer who has been part of several space missions, including the Hubble Space Telescope and NASA's Kepler Mission, and is a leader in the future Large Synoptic Survey Telescope. Walkowicz holds a B.S. in Physics from Johns Hopkins University, a M.S. and Ph. D. from University of Washington, and was a fellow at UC Berkeley before becoming a Henry Norris Russell Fellow at Princeton University. She is a 2013 TED Senior Fellow, a 2011 National Academy of Sciences Kavli Fellow, and has been internationally recognized for her advocacy for conservation of dark night skies.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 26, and therefore deny those allegations.

27. In March 2015, Lucianne presented a TED talk entitled "Let's Not Use Mars as a Backup Planet."

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 27, and therefore deny those allegations.

28. Lucianne's Mars TED talk has been viewed at least 2.2 million times on the TED website.



**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 28, and therefore deny those allegations.

29.  On April 12, 2016, Lucianne served as a panelist for the TED article entitled "4 Big Questions About the Race to Mars."

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 29, and therefore deny those allegations.

30.  On October 10, 2016, Lucianne participated as an expert in a day of space activities at the University of Wisconsin Space Place in Madison, Wisconsin.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 30, and therefore deny those allegations.

31.  During Lucianne's time at the University of Wisconsin Space Place, many parents and teachers participated in astronomy activities led by Lucianne.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 31, and therefore deny those allegations.

32.  On October 11, 2016, Lucianne, as a representative of the Adler planetarium, presented at public science outreach events in Trempleau, Wisconsin as well as LaCrosse, Wisconsin.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 32, and therefore deny those allegations.

33.  On October 13, 2016, Lucianne, together with other leading innovators in the world, participated in the White House Frontiers Conference in Pittsburgh, Pennsylvania.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 33, and therefore deny those allegations.

34.  In July 2017, the United States Library of Congress named Lucianne its Astrobiology Chair at the Kluge Center.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 34, and therefore deny those allegations.

QB\67069140.6

## Lucianne and Mars

35.  Lucianne has long been affiliated with Mars.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 35, and therefore deny those allegations.

36.  In March 2015, Lucianne presented a TED talk entitled "Let's Not Use Mars as a Backup Planet."

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 36, and therefore deny those allegations.

37.  On April 12, 2016, Lucianne served as a panelist for the TED article entitled "4 Big Questions About the Race to Mars."

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 37, and therefore deny those allegations.

38.  Lucianne has studied and continues to study the ethics of Mars exploration.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 38, and therefore deny those allegations.

39.  Indeed, the July 2017 Library of Congress announcement clearly identified Lucianne as studying the ethics of Mars exploration.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 39, and therefore deny those allegations.

40.  The announcement also indicated that Lucianne would work on a project titled "Fear of a Green Planet: Inclusive Systems of Thought for Human Exploration of Mars."

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 40, and therefore deny those allegations.

41.  In 2018, Lucianne appeared in National Geographic's docudrama "Mars."

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 41, and therefore deny those allegations.

QB\67069140.6

**Lucianne and Vega**

42.  Lucianne has long been affiliated with Vega.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 42, and therefore deny those allegations.

43.  Vega is the brightest star in the constellation of Lyra and sits at Lyra's center.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 43, and therefore deny those allegations.

44.  Over the course of her career, Lucianne has devoted considerable research to the constellation Lyra.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 44, and therefore deny those allegations.

45.  Lucianne has publicly discussed Vega numerous times.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 45, and therefore deny those allegations.

**Distinctive Dress, Look, and Style**

46.  Over the course of her career, Lucianne adopted unique dress, look, and style.

**ANSWER:**  Defendants deny the allegations in Paragraph 46.

47.  In particular, Lucianne styled her dark hair with a purple streak on the right side.

**ANSWER:**  Defendants deny the allegations in Paragraph 47.

48.  Lucianne also regularly dressed in distinctive holographic shoes.

**ANSWER:**  Defendants deny the allegations in Paragraph 48.

**Beginning of the "Luciana" Trademark**

49.  Though various parties had applied for "Luciana" in diverse markets, Mattel first filed for "Luciana" as a mark in conjunction with "dolls, doll clothing and doll accessories" in July 2006 as an 1b application or with an "intent to use" status.

**ANSWER:**  Defendants admit Mattel filed trademark applications for LUCIANA,

including for dolls, doll clothing, and doll accessories, in 2006. Defendants affirmatively state that Mattel has filed trademark applications for LUCIANA for dolls in 2006 and 2010, and obtained a trademark registration for PRINCESS LUCIANA for dolls in 2008. Defendants deny any remaining allegations in Paragraph 49.

50. By filing with an "intent to use" status, Mattel represented that it had not yet begun to use the mark in commerce in conjunction with the class of goods for which it sought a registered trademark.

**ANSWER:** Paragraph 50 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 50.

51. On August 23, 2010, after never having been registered, "Luciana" was abandoned, despite Mattel's several requests to extend the time to file a statement of use.

**ANSWER:** Defendants admit that a U.S. trademark application filed by Mattel in July 2006 was deemed abandoned by the USPTO on August 23, 2010. Defendants affirmatively state that Mattel has filed trademark applications for LUCIANA for dolls in 2006 and 2010, and obtained a trademark registration for PRINCESS LUCIANA for dolls in 2008. Defendants deny any remaining allegations in Paragraph 51.

52. In August 2006, Mattel, Inc. first filed for "Princess Luciana" in conjunction with "dolls, doll clothing and doll accessories" in August 2006 as an 1b or intent to use status.

**ANSWER:** Defendants admit that on August 25, 2006 Mattel filed U.S. Application Serial No. 78/960,512 for PRINCESS LUCIANA in connection with "TOYS, GAMES AND PLAYTHINGS, NAMELY, DOLLS, DOLL CLOTHING AND DOLL ACCESSORIES, TOY FIGURES AND ACCESSORIES THEREFOR" in International Class 28, said application matured into U.S. Registration No. 3,374,432 on January 22, 2008. Defendants deny any remaining allegations in Paragraph 52.

53.  On July 24, 2007, the USPTO issued the Notice of Allowance and Mattel, Inc. filed a Statement of Use and specimen on November 26, 2007 in conjunction with a princess Barbie doll.

**ANSWER:**  Defendants admit that the Notice of Allowance for U.S. Application Serial No. 78/960,512 issued on July 24, 2007 and that Mattel filed a Statement of Use on November 26, 2007, which included a Specimen containing PRINCESS LUCIANA used in connection with Barbie doll as "The Island Princess."   Defendants deny any remaining allegations in Paragraph 53.

54.  Mattel filed the following image as the 2007 specimen for "Princess Luciana":



**ANSWER:**  Defendants admit Mattel filed the image depicted above as a Specimen in connection with U.S. Application Serial No. 78/960,512 on November 26, 2007.  Defendants

deny any remaining allegations in Paragraph 54.

55. On January 22, 2008, the USPTO issued a registration certificate with Registration Number 3374432 for "Princess Luciana."

**ANSWER:** Defendants admit that on January 22, 2008 the USPTO issued a registration certificate for U.S. Registration No. 3,374,432 for PRINCESS LUCIANA on the Principal Register, which resulted from U.S. Application Serial No. 78/960,512.

56. On June 10, 2010, Mattel again filed for "Luciana" as a mark in conjunction with "dolls, doll clothing and doll accessories" as an 1b or intent to use status. And, again, Mattel filed for five (5) extensions of time in which to file a statement of use. Eventually, the USPTO marked the application as abandoned February 3, 2014.

**ANSWER:** Defendants admit that on June 10, 2010 Mattel filed U.S. Application Serial No. 85/059,257 for LUCIANA in connection with "DOLLS, DOLL CLOTHING AND DOLL ACCESSORIES" in International Class 28. Defendants admit the USPTO deemed U.S. Application Serial No. 85/059,257 abandoned on February 3, 2014. Defendants affirmatively state that Mattel has filed trademark applications for LUCIANA for dolls in 2006 and 2010, and obtained a trademark registration for PRINCESS LUCIANA for dolls in 2008. Defendants deny any remaining allegations in Paragraph 56.

57. In August 2014, the USPTO cancelled the registration for "Princess Luciana."

**ANSWER:** Defendants admit that the USPTO cancelled U.S. Registration No. 3,374,432 for PRINCESS LUCIANA on August 29, 2014. Defendants deny any remaining allegations in Paragraph 57.

58. On November 19, 2013, Mattel again filed for "Luciana" as a mark in conjunction with "dolls, doll clothing and doll accessories" as an 1b or intent to use status. Eventually, with Mattel having failed to file a statement of use, the USPTO marked the application as abandoned June 8, 2015.

**ANSWER:** Defendants admit that on November 19, 2013 Mattel filed U.S. Application Serial No. 86/122,485 for LUCIANA in connection with "DOLLS, DOLL CLOTHING AND

DOLL ACCESSORIES" in International Class 28.  Defendants admit the USPTO deemed U.S.

Application Serial No. 86/122,485 abandoned on June 8, 2015.  Defendants affirmatively state

that Mattel has filed trademark applications for LUCIANA for dolls in 2006 and 2010, and

obtained a trademark registration for PRINCESS LUCIANA for dolls in 2008.  Defendants

deny any remaining allegations in Paragraph 58.

59.  On February 27, 2014, Mattel, Inc. filed a second application to register "Princess
Luciana" as a mark in conjunction with "dolls, doll clothing and doll accessories" as an 1b or
intent to use status. With Mattel failing to file a Statement of Use, the USPTO marked the
application as abandoned September 21, 2015.

**ANSWER:**  Defendants admit that on February 27, 2014 Mattel filed U.S. Application

Serial No. 86/206,194 for PRINCESS LUCIANA in connection with "TOYS, GAMES AND

PLAYTHINGS, NAMELY, DOLLS, DOLL CLOTHING AND DOLL ACCESSORIES" in

International Class 28.  Defendants admit the USPTO deemed U.S. Application Serial No.

86/206,194  abandoned on September 21, 2015.  Defendants affirmatively state that Mattel has

filed trademark applications for LUCIANA for dolls in 2006 and 2010, and obtained a

trademark registration for PRINCESS LUCIANA for dolls in 2008.  Defendants deny any

remaining allegations in Paragraph 59.

**American Girl Dolls**

60.  Beginning in 2001, American Girl began producing its first American Girl "Girl of
the Year" doll.

**ANSWER:**  Defendants admit that American Girl Brands, LLC independently created

and began selling its "Girl of the Year" dolls in 2001.  Defendants deny any remaining

allegations in Paragraph 60.

61.  Each year thereafter, American Girl would typically produce a new American Girl
"Girl of the Year" doll.

**ANSWER:**  Defendants admit that since 2001 American Girl Brands, LLC has released

13

a new "Girl of the Year" every year thereafter.  Defendants deny any remaining allegations in

Paragraph 61.

62.  Apart from differences in skin tone, hair, and doll clothing and accessories, the American Girl "Girl of the Year" dolls were, essentially, the same model doll.

**ANSWER:**  Defendants deny the allegations in Paragraph 62.

63.  If not the same model, the "Girl of the Year" dolls were nearly the same model.

**ANSWER:**  Defendants deny the allegations in Paragraph 63.

64.  A comparison of the American Girl dolls demonstrates this point:



**ANSWER:**  Defendants deny the allegations in Paragraph 64.

## American Girl Names and Trademarks

65.  The filing by American Girl of a trademark application for a girl's name does not, by itself, indicate that American Girl has a specific design or look in mind for the doll associated with that name.

**ANSWER:**   Paragraph 65 contains legal conclusions to which no response is required.

To the extent a response is required, Defendants deny the allegations in Paragraph 65.

66.  In fact, over the course of the last thirty (30) years, American Girl has filed more than 100 trademark applications for names of girls associated with dolls.

**ANSWER:**  Defendants admit that over the last thirty (30) years American Girl, LLC

has filed more than 100 U.S. trademark applications in connection with names for dolls.

Defendants deny any remaining allegations in Paragraph 66.

67.  In each of 2002 and 2010, American Girl filed eleven (11) trademark applications for unique personal names associated with dolls.

**ANSWER:**  Defendants admit that in 2002 and in 2010 American Girl, LLC filed at

least eleven (11) U.S. trademark applications in connection with names for dolls.

68.  In each of 2013 and 2014, American Girl filed seven (7) trademark applications for unique personal names associated with dolls.

**ANSWER:**  Defendants admit that in 2013 American Girl, LLC filed at least seven (7)

U.S. trademark applications in connection with names for dolls.  Defendants deny any

remaining allegations in Paragraph 68 and affirmatively state that in 2014 American Girl, LLC

filed at least five (5) U.S. trademark applications in connection with names for dolls.

69.  And, in 2015, American Girl filed thirteen (13) trademark applications for unique personal names associated with dolls.

**ANSWER:**  Defendants admit that in 2015 American Girl, LLC filed at least thirteen

(13) U.S. trademark applications in connection with names for dolls.

70.  In many of these cases, American Girl files the marks with an intent to use without a pre-existing specimen.

**ANSWER:**  Defendants admit that in some of the U.S. trademark applications, American Girl, LLC filed the application under Section 1(b) of the Trademark Act stating a bona fide intent to use the mark in the near future.  Defendants deny any remaining allegations in Paragraph 70.

### American Girl Access and Knowledge

71.  The American Girl headquarters is approximately 8 miles from Monona Terrace Community and Convention Center ("Monona Terrace").

**ANSWER:**  Defendants admit that American Girl Brands, LLC is located approximately 8 miles from Monona Terrace Community and Convention Center but deny any remaining allegations of Paragraph 71.

72.  Most likely, many American Girl employees live within the vicinity of Monona Terrace.

**ANSWER:**  Defendants deny the allegations in Paragraph 72.

73.  Among these, Rebecca DeKuiper ("DeKuiper"), a Lead Designer of the "Girl of the Year" brand for American Girl, purchased residential property less than three miles from the Monona convention center in 2013.

**ANSWER:**  Defendants deny the allegations in Paragraph 73.

74.  At the time Lucianne provided her well-publicized TED talk at the Monona convention center, DeKuiper owned a residence less than three miles from Monona Terrace.

**ANSWER:**  Defendants deny the allegation in Paragraph 74.

75.  In fact, DeKuiper owned this property less than three miles from Monona Terrace until June 2018.

**ANSWER:**  Defendants deny the allegation in Paragraph 75.

76.  Quite possibly, DeKuiper and other American Girl employees attended Lucianne's well-publicized TED talk at the Monona Terrace.

**ANSWER:**  Defendants deny the allegation in Paragraph 76.

77.  At least one American Girl employee or consultant attended Lucianne's well-publicized TED talk at the Monona Terrace.

**ANSWER:** Defendants deny the allegation in Paragraph 77.

78. At least one American Girl employee or consultant attended the day of space activities at the University of Wisconsin Space Place in Madison, Wisconsin on October 10, 2016 in which Lucianne participated.

**ANSWER:** Defendants deny the allegation in Paragraph 78.

79. At least one American Girl employee or consultant attended the public science outreach events in Trempleau, Wisconsin as well as LaCrosse, Wisconsin at which Lucianne presented on October 11, 2016.

**ANSWER:** Defendants deny the allegation in Paragraph 79.

80. In each of these instances, DeKuiper may have attended an event at which Lucianne participated or presented.

**ANSWER:** Defendants deny the allegation in Paragraph 80.

81. On October 7, 2016, American Girl Brands, LLC, executed a contract with NASA to consult on the accuracy of its dolls.

**ANSWER:** Defendants admit that allegations in Paragraph 81.

82. On October 13, 2016, Ellen Stofan, a NASA doll consultant, attended the White House Frontiers Conference in Pittsburgh, Pennsylvania where Lucianne participated.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 82, and therefore deny those allegations.

### The New "Luciana" Trademark Applications

83. Next month, on November 23, 2016, American Girl filed an application for the mark "Luciana" in conjunction with "dolls and doll accessories" as an 1b or intent to use status.

**ANSWER:** Defendants admit that American Girl, LLC owns a U.S. Trademark Registration for LUCIANA that was filed on November 23, 2016, and assigned U.S. Application Serial No. 87/246,912, in connection with "Dolls and doll accessories" under Section 1(a). Defendants affirmatively state that Mattel has filed trademark applications for LUCIANA for dolls in 2006 and 2010, and obtained a trademark registration for PRINCESS LUCIANA for dolls in 2008. Defendants deny any remaining allegations in Paragraph 83.

84.  On December 15, 2016, American Girl filed an application for the mark "Luciana Vega" in conjunction with "dolls, doll clothing and doll accessories" as an 1b or intent to use status.

**ANSWER:**  Defendants admit that American Girl, LLC owns a U.S. Trademark

Registration for LUCIANA VEGA that was filed on December 15, 2016, and assigned U.S.

Application Serial No. 87/269,783, in connection with "DOLLS, DOLL CLOTHING AND

DOLL ACCESSORIES." under Section 1(b) of the Trademark Act based on bona fide intent to

use the mark.  Defendants deny any remaining allegations in Paragraph 84.

85.  On April 11, 2017, the United States Patent and Trademark Office published the "Luciana" mark for opposition.

**ANSWER:**  Defendants admit that U.S. Application Serial No. 87/246,912 for

LUCIANA was published for opposition on April 11, 2017.

86.  On January 3, 2018, American Girl first used the "Luciana" mark in commerce.

**ANSWER:**  Defendants deny the allegations in Paragraph 86 and affirmatively state that

Mattel has filed trademark applications for LUCIANA for dolls in 2006 and 2010, and obtained

a trademark registration for PRINCESS LUCIANA for dolls in 2008.

87.  On January 18, 2018, American Girl filed its Statement of Use and specimen for the November 23, 2016 application for "Luciana."

**ANSWER:**  Defendants admit that American Girl, LLC filed its Statement of Use and

specimen in connection with U.S. Application Serial No. 87/246,912 for LUCIANA on January

18, 2018.

88.  American Girl filed the following image as the 2018 specimen for "Luciana":



**ANSWER:**  Defendants admit that American Girl, LLC filed the image depicted in Paragraph 88 in connection with the specimen filed in U.S. Application Serial No. 87/246,912 for LUCIANA on January 18, 2018.

89.  A close-up of the specimen appears as:



**ANSWER:**  Defendants admit that the image depicted in Paragraph 89 appears to be a close-up representation of the specimen filed in U.S. Application Serial No. 87/246,912 for LUCIANA on January 18, 2018.  Defendants deny any remaining allegations in Paragraph 89.

90.  The USPTO registered the "Luciana" mark on March 13, 2018 with registration number 5424449.

**ANSWER:**  Defendants admit the USPTO registered American Girl, LLC's LUCIANA trademark on the Principal Register on March 13, 2018 as U.S. Registration No. 5,424,449.

QB\67069140.6

91.  On March 28, 2018, American Girl filed its Statement of Use and specimen for the "Luciana Vega" trademark application.

**ANSWER:**  Defendants admit that American Girl, LLC filed its Statement of Use and specimen in connection with U.S. Application Serial No. 87/269,783 for LUCIANA VEGA on March 28, 2018.

92.  American Girl filed the following image as the 2018 specimen for "Luciana":



**ANSWER:**  Defendants deny the allegations in Paragraph 92.  Defendants affirmatively state that American Girl, LLC filed a specimen of use in connection with U.S. Application Serial No. 87/269,783 for LUCIANA VEGA that included the image depicted in Paragraph 92.

93.  The USPTO registered the mark on June 12, 2018 with number 5493072.

**ANSWER:**  Defendants admit the USPTO registered American Girl, LLC's LUCIANA VEGA trademark on the Principal Register on June 12, 2018 as U.S. Registration No. 5,493,072.

QB\67069140.6

**"Luciana Vega"**

94.  In 2018, American Girl launched the Luciana Vega "Girl of the Year" doll ("Luciana Vega").



**ANSWER:**  Defendants admit the allegations in Paragraph 94.

95.  The Luciana Vega doll appeared on the cover of American Girl's January/February 2018 catalog.

**ANSWER:**  Defendants admit the allegations in Paragraph 95.

96.  The January/February 2018 catalog also featured the doll, a related book, and accessories across several pages.

**ANSWER:**  Defendants admit the allegations in Paragraph 96.

QB\67069140.6

97.  Luciana Vega has dark hair with a purple hair streak on the right side of her face.



**ANSWER:**  Defendants admit the allegations in Paragraph 97.

98.  In describing Luciana Vega, American Girl states:

With a dream of becoming the first astronaut on Mars, Luciana Vega is excited for the chance to attend space training. But is she ready for the challenges—both physical and mental—that await?

Luciana's adventures start off at Space Camp, where she learns that a love of science isn't enough to lead a team to success—being a dependable partner is just as important. Luciana takes this lesson to a youth astronaut training camp, but during an underwater simulation, a crisis creates new fears she must conquer. Then, at the invitation of a friend, Luciana gets to visit a Mars habitat in the desert. But the friendship is tested when things don't go as planned.

Join Luciana on her quest to reach Mars—and watch how she grows smarter and stronger along the way.

**ANSWER:**  Defendants admit the allegations in Paragraph 98.

99.  Advertisements for the Luciana Vega doll use a quote from Dr. Ellen Stofan, the NASA doll consultant who attended the White House Frontiers Conference in Pittsburgh, Pennsylvania at which Lucianne spoke.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 99 and therefore deny those allegations.

100.  Among accessories for Luciana Vega, American Girl provides a "Telescope Projector Set" (SKU#: FMC79):



**ANSWER:**  Defendants admit the allegations in Paragraph 100.

101.  Among accessories for Luciana Vega, American Girl provides a "Mars Habitat" (SKU#: FMC80):



**ANSWER:**  Defendants admit the allegations in Paragraph 101.

102.  Luciana Vega wears silver holographic shoes similar to holographic shoes worn by Lucianne.

**ANSWER:**  Defendants deny the allegations in Paragraph 102.

24

## Lucianne and "Luciana Vega"

103.  Here, the Defendants used the name and likeness of Lucianne, a well-known figure in astronomy, space, and STEM, who particularly has studied the star Vega, in conjunction with the American Girl Doll "Luciana Vega" without obtaining Lucianne's authorization.

**ANSWER:**  Defendants deny the allegations in Paragraph 103.

104.  Apart from the skin color, hair color, and doll clothing and accessories, every American Girl "Girl of the Year" is physically identical or, if not entirely identical, nearly identical to each other.

**ANSWER:**  Defendants admit that American Girl's "Girl of the Year" dolls all use the same facial features but can include or feature differences in skin tone, hair, clothing, and accessories.  Defendants deny any remaining allegations in Paragraph 104.

105.  As such, the only physical differences between each "Girl of the Year" doll are represented by the skin color, hair color, and doll clothing and accessories.

**ANSWER:**  Defendants deny the allegations in Paragraph 105.

106.  Additionally, the name and background of each "Girl of the Year" doll typically differs.

**ANSWER:**  Defendants admit the allegations in Paragraph 106.

107.  Here, although the nationality and skin color of the "Luciana Vega" doll differ from those of Lucianne, the physical differences between them stop there.

**ANSWER:**  Defendants deny the allegations in Paragraph 107.

108.  Both "Luciana Vega" and Lucianne have dark brown hair.

**ANSWER:**  Defendants deny the allegations in Paragraph 108.

109.  Prior to the release of "Luciana Vega," Lucianne's dark brown hair featured a distinctive purple highlighted streak on the right side.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 109, and therefore deny those allegations.

110.  Like Lucianne, "Luciana Vega" features a distinctive purple highlighted streak on the right side.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

25

the allegations of Paragraph 110, and therefore deny those allegations.

111.   In fact, the color purple has been a distinctive feature in Lucianne's hair for many years

**ANSWER:**  Defendants deny the allegations in Paragraph 111.

112.   As Lucianne has regularly dressed in distinctive holographic shoes, so too does "Luciana Vega" sport holographic shoes.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 112, and therefore deny those allegations.

113.   The "Luciana Vega" accessories also include a holographic backpack.

**ANSWER:**  Defendants admit the allegations in Paragraph 113.

114.   As Lucianne has regularly worn space themed clothing, including space patterned dresses, so too does "Luciana Vega" also wear a space themed patterned dress.

**ANSWER:**  Defendants deny the allegations in Paragraph 114.

115.   Similar to Lucianne's professional background in astronomy, space, and STEM, "Luciana Vega"'s background focuses on space.

**ANSWER:**  Defendants deny the allegations in Paragraph 115.

116.   Lucianne is an astronomer, and the accessories for Luciana Vega include a telescope, Telescope Projector Set, and star chart.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 116, and therefore deny those allegations.

117.   The accessories also include a space themed blanket for stargazing.

**ANSWER:**  Defendants deny the allegations in Paragraph 117.

118.   Lucianne has been involved in diverse matters related specifically to Mars.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 118, and therefore deny those allegations.

119.   A focus of Luciana Vega relates to travelling to Mars.

**ANSWER:**  Defendants admit that the fictional character Luciana Vega aspires to travel

26

to Mars.  Defendants deny any remaining allegations in Paragraph 119.

120.  Lucianne has been involved in and appeared on the National Geographic television series "Mars" about colonization of Mars and Mars habitats.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 120, and therefore deny those allegations.

121.  Luciana Vega's accessories include a Mars Habitat.

**ANSWER:**  Defendants admit the allegations in Paragraph 121.

122.  Additionally, in the book "Luciana: Out of This World," Luciana Vega visits NASA scientists in a simulated Mars habitat.

**ANSWER:**  Defendants admit that the book "Luciana: Out of This World" fictional

character Luciana Vega, of Chilean descent, travels to Chile with her family and visits a

simulated Mars habitat in the Chilean desert.  Defendants deny any remaining allegations in

Paragraph 122.

123.  The "Luciana Vega" accessories also include a flight suit and space suit.

**ANSWER:**  Defendants admit the allegations in Paragraph 123.

124.  As to their names, although the name "Lucianne" and "Luciana" differ slightly, they are very similar.

**ANSWER:**  Defendants deny the allegations in Paragraph 124.

125.  And, though Mattel had sought trademarks for "Luciana" to develop as either an undefined doll or a Barbie doll prior to American Girl applying for the same trademark, the timing for use of "Luciana" in conjunction with a doll interested in space exploration and a profession in space-centered sciences is striking.

**ANSWER:**  Defendants deny the allegations in Paragraph 125.

126.  The application for and use of the name "Luciana Vega" as a trademark becomes more striking and directly related to Lucianne given Vega represents a star that has been a significant focus of Lucianne's studies.

**ANSWER:**  Defendants deny the allegations in Paragraph 126.

127.  In short, the Defendants used Lucianne's persona – Lucianne's name, likeness,

image, and background in creating, producing, marketing, and selling the "Luciana Vega" doll.

**ANSWER:** Defendants deny the allegations in Paragraph 127.

## Confusion with Plaintiff

128.  Again, the Defendants incorporated the same color hair streak, shoes, and style of Lucianne in the Luciana Vega doll.

**ANSWER:** Defendants deny the allegations in Paragraph 128.

129.  Following the public release of the Luciana Vega doll, Lucianne began receiving electronic mail and social media messages relating to the uncanny similarities between the "Luciana Vega" doll and Lucianne.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 129, and therefore deny those allegations.

130.  Each person who contacted Lucianne regarding the similarities did so based on the totality of the similarity to Lucianne's name, hair, dress, mannerisms, profession, and even specific aspects of Lucianne's research.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 130, and therefore deny those allegations.

131.  Lucianne's lifelong achievements regarding the ethics of Mars exploration and work on the Kepler Field are so distinctive to Lucianne's career that the Luciana Vega doll created confusion as to Lucianne's endorsement of the brand and product.

**ANSWER:** Defendants deny the allegations in Paragraph 131.

132.  Indeed, Lucianne received inquiries as to Lucianne's endorsement of the brand and product.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to

the allegations of Paragraph 132, and therefore deny those allegations.

133.  There has been confusion as to the endorsement of the brand, product, and "Luciana Vega" doll by Lucianne.

**ANSWER:** The allegations contained in Paragraph 133 constitute legal conclusions to

which no answer is required.  To the extent a response is necessary, Defendants deny the

allegations in Paragraph 133.

134.  Even among those people who believe Lucianne should see the doll as a compliment, the people perceive Lucianne's persona within the "Luciana Vega" doll.

**ANSWER:**  Defendants deny the allegations in Paragraph 134.

135.  There has been widespread recognition of the striking similarities between "Luciana Vega" and Lucianne.

**ANSWER:**  Defendants deny the allegations in Paragraph 135.

136.  The confusion led to interference with Lucianne's professional public persona.

**ANSWER:**  The allegations contained in Paragraph 136 constitute legal conclusions to which no answer is required.  To the extent a response is necessary, Defendants deny the allegations in Paragraph 136.

137.  Clearly, Lucianne appreciates any effort to encourage STEM among young girls.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 137, and therefore deny those allegations.

138.  However, Lucianne does not appreciate and, in fact, objects to the use of Lucianne's name, likeness, image, and persona without permission.

**ANSWER:**  The allegations contained in Paragraph 138 constitute legal conclusions to which no answer is required.  To the extent a response is necessary, Defendants deny the allegations in Paragraph 138.

139.  Further, Lucianne does not appreciate and, in fact, objects to the use of Lucianne's name, likeness, image, and persona without permission in an expensive doll outside the economic reach of many young girls and families.

**ANSWER:**  The allegations contained in Paragraph 139 constitute legal conclusions to which no answer is required.  To the extent a response is necessary, Defendants deny the allegations in Paragraph 139.

**Consistent Theme**

140.  The Defendants' conduct reflects a consistent pattern and theme.

**ANSWER:**  Defendants deny the allegations in Paragraph 140.

141.  The Defendants have used the names and likenesses of other well-known individuals without apparent authorization.

**ANSWER:**  Defendants deny the allegations in Paragraph 141.

142.  For instance, in 2017, Defendants used the likeness of a county music superstar for their Girl of the Year doll, Tenney Grant, which is sold with a guitar labeled with the brand name Taylor.

**ANSWER:**  Defendants deny the allegations in Paragraph 142.

143.  The author of Tenney's Journal sold with the Tenney Grant doll also published a biography of Taylor Swift.

**ANSWER:**  Defendants deny the allegations in Paragraph 143.

144.  Tenney Grant accessories include dresses much like those Taylor Swift has worn in public concerts.

**ANSWER:**  Defendants deny the allegations in Paragraph 144.

<u>**COUNT ONE**</u>
<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>
<u>**VIOLATION OF RIGHT OF PRIVACY**</u>
<u>**WISCONSIN STATUTE 995.50**</u>

Pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part Defendants' Motion to Dismiss the Amended Complaint, the Court dismissed Plaintiff's Count One for violation of Wisconsin Statute § 995.50.  Accordingly, no further response to Paragraphs 145 through 166 of the Amended Complaint are required.  To the extent a response is necessary, Defendants deny all allegations in Paragraphs 145–166.

QB\67069140.6

## COUNT TWO
## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF LANHAM ACT
## 15 U.S.C. § 1125

167.  The Plaintiff incorporates paragraphs 1 through 144 above in this Second Count as though fully set forth herein.

**ANSWER:**  Defendants incorporate by reference each of their foregoing responses to

paragraphs 1 through 166 above as though fully set forth herein.

168.  The Defendants have used Lucianne's name in the sale and promotion of the Luciana Vega doll and accessories.

**ANSWER:**  Defendants deny the allegations in Paragraph 168.

169.  The Defendants have used Lucianne's likeness (again, image, likeness, and persona collectively) in the sale and promotion of the Luciana Vega doll and accessories.

**ANSWER:**  Defendants deny the allegations in Paragraph 169.

170.  The Defendants have used Lucianne's name and likeness in the licensing of any intellectual property associated with the Luciana Vega doll.

**ANSWER:**  Defendants deny the allegations in Paragraph 170.

171.  The Defendants used Lucianne's name and likeness without Lucianne's consent.

**ANSWER:**  Defendants deny the allegations in Paragraph 171.

172.  The Defendants used Lucianne's name and likeness in commerce.

**ANSWER:**  Defendants deny the allegations in Paragraph 172.

173.  The Defendants used Lucianne's name and likeness in connection with the sale of goods, namely the Luciana Vega doll and accessories.

**ANSWER:**  Defendants deny the allegations in Paragraph 173.

174.  The Defendants hold no valid mark to Luciana.

**ANSWER:**  Defendants deny the allegations in Paragraph 174.

175.  The Defendants hold no valid mark to Luciana Vega.

**ANSWER:**  Defendants deny the allegations in Paragraph 175.

176.  In their trademark applications for the marks "Luciana" and "Luciana Vega," the Defendants did not disclose that they based the marks on a particular living person.

**ANSWER:**  Pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part Defendants' Motion to Dismiss the Amended Complaint, the Court dismissed Plaintiff's requested remedy of trademark cancellation.  Accordingly, no further response to Paragraph 176 is required.  To the extent a response is necessary, Defendants deny all allegations in Paragraph 176.

177.  In their trademark applications for the marks "Luciana" and "Luciana Vega," the Defendants did not disclose that they based the marks on Lucianne.

**ANSWER:**  Pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part Defendants' Motion to Dismiss the Amended Complaint, the Court dismissed Plaintiff's requested remedy of trademark cancellation.  Accordingly, no further response to Paragraph 177 is required.  To the extent a response is necessary, Defendants deny all allegations in Paragraph 177.

178.  Because the marks Luciana and Luciana Vega are used in conjunction with a doll that portrays Lucianne, and because the marks utilize a diminutive version of Lucianne's name together with the name of a star that is the subject of Lucianne's research, the marks do identify a particular living individual.

**ANSWER:**  Pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part Defendants' Motion to Dismiss the Amended Complaint, the Court dismissed Plaintiff's requested remedy of trademark cancellation.  Accordingly, no further response to Paragraph 178 is required.  To the extent a response is necessary, Defendants deny all allegations in Paragraph 178.

179.  Had they properly disclosed such information, the Defendants would have had to file a signed, written consent from Lucianne to register the marks.

**ANSWER:**  Pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part Defendants' Motion to Dismiss the Amended Complaint, the Court dismissed Plaintiff's

32

requested remedy of trademark cancellation.  Accordingly, no further response to Paragraph 179

is required.  To the extent a response is necessary, Defendants deny all allegations in Paragraph

179.

180.  Thus, the marks "Luciana" Reg. No. 5424449 and "Luciana Vega"
Reg. No. 5493072 are invalid due to the Defendants' misrepresentations to the United States
Patent and Trademark Office that the marks are not based on and do not identify a particular
living individual.

**ANSWER:**  Pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part

Defendants' Motion to Dismiss the Amended Complaint, the Court dismissed Plaintiff's

requested remedy of trademark cancellation.  Accordingly, no further response to Paragraph 180

is required.  To the extent a response is necessary, Defendants deny all allegations in Paragraph

180.

181.  The Defendants' use of Lucianne's name and likeness has caused confusion as to
the affiliation, connection, or association of Lucianne with the origin, sponsorship,
endorsement, and approval of the Luciana Vega doll and accessories.

**ANSWER:**  Defendants deny the allegations in Paragraph 181.

182.  The Defendants' conduct has harmed Lucianne in a commercial context and with
respect to a commercial interest in sales and licensing of Lucianne's name and likeness.

**ANSWER:**  Defendants deny the allegations in Paragraph 182.

183.  Lucianne's loss of commercial interest in an applicable percentage of revenue from
the sales of the Luciana Vega doll and accessories are proximately caused by the Defendants'
conduct.

**ANSWER:**  Defendants deny the allegations in Paragraph 183.

184.  Lucianne's loss of commercial interest in a license fee for the use of her name and
likeness in the sales of the Luciana Vega doll and accessories are proximately caused by the
Defendants' conduct.

**ANSWER:**  Defendants deny the allegations in Paragraph 184.

185.  Additionally, the unauthorized use of Lucianne's name and likeness dilute the
value of Lucianne's name and any competing product lines that Lucianne might legitimately

endorse, an action well within her rights.

**ANSWER:** Defendants deny the allegations in Paragraph 185.

186.  Based on the foregoing, the Defendants violated 15 U.S.C. § 1125(a).

**ANSWER:** Defendants deny the allegations in Paragraph 186.

187.  WHEREFORE, the Plaintiff seeks an award of (a) compensatory damages arising from the Defendants' violation of 15 U.S.C. § 1125(a); (b) attorney's fees; (c) an accounting; (d) cancellation of Defendants' invalid marks Luciana and Luciana Vega; and (e) any such other and further relief as this Court may deem just and proper or to which Lucianne may be entitled as a matter of law and equity.

**ANSWER:** Defendants deny that Plaintiff is entitled to any relief whatsoever from

Defendants, including without limitation the relief requested in Paragraph 187.  Furthermore,

pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part Defendants' Motion

to Dismiss the Amended Complaint, the Court dismissed Plaintiff's requested remedy of

trademark cancellation.

<u>**COUNT THREE**</u>
<u>**AS AND FOR A THIRD CAUSE OF ACTION**</u>
<u>**NEGLIGENCE**</u>

Pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part Defendants'

Motion to Dismiss the Amended Complaint, the Court dismissed Plaintiff's Count Three for

negligence.  Accordingly, no further response to Paragraphs 188 through 198 of the Amended

Complaint are required.  To the extent a response is necessary, Defendants deny all allegations

in Paragraphs 188–198.

<u>**COUNT FOUR**</u>
<u>**AS AND FOR A FOURTH CAUSE OF ACTION**</u>
<u>**NEGLIGENT SUPERVISION**</u>

Pursuant to the Court's February 11, 2021 Order (Dkt. 40) granting in part Defendants'

Motion to Dismiss the Amended Complaint, the Court dismissed Plaintiff's Count Four for

negligent supervision.  Accordingly, no further response to Paragraphs 199 through 209 of the

Amended Complaint are required.  To the extent a response is necessary, Defendants deny all allegations in Paragraphs 199–209.

## GENERAL

210.  Where conditions precedent are alleged, the Plaintiff avers that all conditions precedent have been performed or have occurred.

**ANSWER:**  The allegations contained in Paragraph 210 constitute legal conclusions to which no answer is required.  To the extent a response is necessary, Defendants deny the allegations in Paragraph 210.

211.  The Plaintiff demands a jury trial.

**ANSWER:**  Defendants admit that Plaintiff has demanded a jury and likewise demand a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF LUCIANNE M. WALKOWICZ accordingly and respectfully prays for judgment against DEFENDANTS AMERICAN GIRL, LLC, AMERICAN GIRL BRANDS, LLC, AND MATTEL, INC. as follows:

1. That PLAINTIFF LUCIANNE M. WALKOWICZ be awarded compensatory damages in an amount to be determined at trial;

2. That PLAINTIFF LUCIANNE M. WALKOWICZ be awarded punitive damages in an amount to be determined at trial;

3. That PLAINTIFF LUCIANNE M. WALKOWICZ be awarded statutory damages in an amount to be determined at trial;

4. That PLAINTIFF LUCIANNE M. WALKOWICZ be awarded her reasonable attorney's fees and costs; and,

5. That PLAINTIFF LUCIANNE M. WALKOWICZ be awarded injunctive relief to the cancellation of marks Luciana and Luciana Vega; and

6. The PLAINTIFF LUCIANNE M. WALKOWICZ be awarded injunctive relief to cease and desist all sales of the Luciana Vega dolls and accessories

7. The PLAINTIFF LUCIANNE M. WALKOWICZ be awarded injunctive relief to cease and desist any licensing of the Luciana and Luciana Vega marks; and

8. That PLAINTIFF LUCIANNE M. WALKOWICZ be awarded any such other and further relief as this Court may deem just and proper or to which Plaintiff may be entitled as a matter of law and equity.

**ANSWER:** Defendants deny any and all allegations contained in Plaintiff's Prayer for Relief. Defendants deny that Plaintiff is entitled to any relief whatsoever from Defendants, including without limitation the relief requested in the Amended Complaint's Prayer for Relief.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Without assuming any burden that Defendants would not otherwise bear under applicable law and rules, and specifically reserving their right to assert additional affirmative defenses as additional information or materials become available through discovery or otherwise, Defendants hereby assert the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement)

Defendants have not done anything that is likely to cause confusion or mistake as to the source, origin, sponsorship, or affiliation with respect to Plaintiff, or Plaintiff's products or services, as demonstrated by the differences between the Parties' respective personas and the use of other source identifying indicia of origin in connection with Defendants' products.

### SECOND AFFIRMATIVE DEFENSE
### (Plaintiff's Purported Mark is Generic)

Defendants' alleged use of Plaintiff's purported mark does not constitute trademark infringement, false designation of origin, or any other violation under 15 U.S.C. § 1125 because Plaintiff's purported mark, including Plaintiff's name and likeness as described in the Amended Complaint, is generic. The relevant purchasing public does not understand Plaintiff's purported mark or elements of a mark to be a trademark such that the mark and/or elements are known to the relevant consuming public as designating certain goods and/or services as originating

36

exclusively from or with Plaintiff. The features and/or elements Plaintiff contends are protected, namely dark brown hair with a purple highlight streak, space themed clothing, and holographic shoes are generic features or attributes not unique to Plaintiff and cannot identify any one individual exclusively.

Indeed, the concept of adding a purple streak to dark hair or wearing space themed clothing is not a novel concept unique to Plaintiff and examples of which can be readily found on social media and the Internet. In fact, the concept of adding color streaking to hair is a not novel concept within the astronomy, STEM, and NASA fields. For example, NASA Systems Engineer Farah Alibay, an engineer on NASA's recent Mars rover 'Perseverance' landing, since at least 2016 frequently appears publicly with color streaks in her hair, including the colors blue and/or purple, and wearing space themed clothing.









Moreover, a search on Instagram for "#spacehair" returns over 10,000 posts and "#galaxyhair" returns over 150,000 posts with photos of purple and/or blue highlighted or streaked hair, often combined with other space themes.

Space themed clothing is also not novel or unique to Plaintiff.  In 2017, astronaut Buzz Aldrin and celebrity scientist Bill Nye modeled space themed clothing at Chanel's "Mission to Mars" fashion show.  Chanel's Paris show two weeks later included models showcasing space inspired clothing and holographic shoes.

QB\67069140.6

Accordingly, the features and/or elements Plaintiff claims are source identifying are instead generic and widely adopted styling features in the astronomy, STEM, and NASA fields. Such features and/or elements therefore cannot designate any goods and/or services as originating exclusively from or with Plaintiff.

Additionally, the name "Luciana" is popular in the Spanish-speaking community, which influenced American Girl's selection and adoption of the name in connection with its Girl of the Year doll.

Lastly, the features and/or elements of Plaintiff's image or likeness that Plaintiff claims are protected are in fact fluid physical features or attributes that are easy to change. For example, upon information and belief, Plaintiff's hair color and styling frequently changes and Plaintiff does not wear space themed clothing on a regular basis. Such fluid features and attributes are generic and cannot constitute a protectable trademark or bestow protected rights under the Lanham Act.

### THIRD AFFIRMATIVE DEFENSE
### (Plaintiff's Purported Mark is Descriptive)

Defendants' alleged use of Plaintiff's purported mark does not constitute trademark infringement, false designation of origin, or any other violation under 15 U.S.C. § 1125 because Plaintiff's purported mark, including Plaintiff's name and likeness as described in the Amended Complaint, is descriptive and non-trademark use.

### FOURTH AFFIRMATIVE DEFENSE
### (Ornamental Use)

The features and/or elements Plaintiff claims as a protected trademark are not subject to trademark protection because the purported trademark is a decorative feature that does not identify Plaintiff as the sole source of any goods and/or services and thus cannot function as a trademark. As used by Plaintiff, the relevant consuming public and/or the industry would

39

perceive the features and/or elements Plaintiff claims rights to as an ornamental form of decoration, styling, or physical appearance, and thus would not associate such features and/or elements as indicating Plaintiff as the source of any goods and/or services.

### FIFTH AFFIRMATIVE DEFENSE
### (Fair Use)

Defendants' alleged use of Plaintiff's purported mark does not constitute trademark infringement, false designation of origin, or any other violation under 15 U.S.C. § 1125 because Defendants' uses the allegedly protected features and/or elements of Plaintiff's purported mark fairly and in good faith.  Defendants' use therefore constitutes fair use.

### SIXTH AFFIRMATIVE DEFENSE
### (Laches)

Defendants have filed trademark applications for LUCIANA for dolls in 2006 and 2010, and obtained a trademark registration for PRINCESS LUCIANA for dolls in 2008, have offered consumers the ability to add color streaks or highlighting to their dolls' heads since at least as early as 2013, released American Girl's 2014 Girl of the Year doll with a dark pink streak in her hair, and have been producing space themed dolls since at least as early as 1965.  Plaintiff has unreasonably delayed in bringing claims against Defendants.  This unreasonable delay has prejudiced Defendants and thus bars Plaintiff from recovery based on the doctrine of laches.

### PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any relief whatsoever from Defendants, including without limitation the relief requested in the Amended Complaint's Prayer for Relief. Wherefore, Defendants respectfully request entry of judgment in its favor against Plaintiff as follows:

A.    Dismissing the Complaint in this action in its entirety with prejudice;

40

B.   Declaring that Defendants do not infringe and have not infringed, in any way, any rights of Plaintiff;

C.   An award of Defendants' attorneys' fees and costs incurred in connection with this action, including those incurred in defending against the allegations in the Complaint; and

D.   Granting Defendants such other and further relief as this Court deems just and proper.

QB\67069140.6

Respectfully submitted February 25, 2021.

*/s/ Kristin Graham Noel*
Kristin Graham Noel
Lori S. Meddings
Bryce A. Loken
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Telephone: (608) 251-5000
Facsimile: (608) 251-9166
kristin.noel@quarles.com
lori.meddings@quarles.com
bryce.loken@quarles.com

Johanna M. Wilbert
Katelin V. Drass
QUARLES & BRADY LLP
411 E Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 277-5000
Facsimile: (414) 271-3552
johanna.wilbert@quarles.com
katelin.drass@quarles.com

Mark S. Lee  *(pro hac vice)*
Rimon, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA  90067
Telephone: (310) 361-5776
Facsimile:  (213) 375-3811
mark.lee@rimonlaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2021, I caused to be electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kristin Graham Noel*
Kristin Graham Noel
